Law Offices
PARKER McCAY P.A.
Frank P. Cavallo, Jr., Esquire (*Attorney ID: 017951986*)
Melissa S. Kolaski, Esquire (*Attorney ID: 434522023*)
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054
(856) 596-8900
Attorneys for Defendant, Marilyn Dunham, in her capacity as President of the Burlington Township Board of Education

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA LEMA, ROBERT SHULL, CHRISTOPHER STADULIS, LAURIE VALENTI and IRMA NUNEZ,<br>Plaintiffs,<br><br>v.<br><br>JENNIFER DAVENPORT, in her official capacity as Attorney General of the State of New Jersey; LILY LAUX, in her official capacity as Acting Commissioner of the New Jersey Department of Education, JENNIFER HARRIS, in her official capacity as President of HACKENSACK BOARD OF EDUCATION, MARILYN DUNHAM, in her capacity as President of the BURLINGTON TOWNSHIP BOARD OF EDUCATION, BRENDAN MCISAAC, in his official capacity as President of the NORTH HUNTERDON-VORHEES REGIONAL HIGH SCHOOL, DANIEL MACDONNELL, in his official capacity as President of the | Civil Action<br><br>**DOCKET NO. 3:26-cv-04682** |

BETHLEHEM TOWNSHIP BOARD OF EDUCATION, and HASANI K. COUNCIL, in his official capacity as President of the NEWARK BOARD OF EDUCATION,

Defendants.

**DEFENDANT, MARILYN DUNHAM'S, IN HER CAPACITY AS PRESIDENT OF THE BURLINGTON TOWNSHIP BOARD OF EDUCATION, OPPOSITION BRIEF TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

PROCEDURAL AND FACTUAL HISTORY .......... 2

LEGAL ARGUMENT .......... 2

I. THIS COURT MUST DENY PLAINTIFFS' MOTION AS IT DOES NOT MEET THE LEGAL STANDARD FOR A PRELIMINARY INJUNCTION... 2

A. PLAINTIFFS DO NOT HAVE A LIKELIHOOD TO SUCCEED ON THE MERITS OF THIS CASE .......... 4

i. PLAINTIFFS' RELIANCE ON MIRABELLI IS INCONSISTENT WITH THE CIRCUMSTANCES BEFORE THIS COURT .......... 5

ii. THE STATE OF NEW JERSEY HAS PRECEDENT THAT SUPPORTS DEFENDANTS' POSITION AND ENFORCEMENT OF ITS POLICIES .......... 9

B. PLAINTIFFS HAVE NOT AND WILL NOT SUFFER ANY IRREPARABLE HARM. .......... 12

C. THE RELIEF WILL RESULT IN GREATER HARM TO THE DEFENDANTS AS THE PAUSING OF THIS POLICY VIOLATES NJLAD. .......... 15

D. THE PUBLIC INTEREST DOES NOT FAVOR RELIEF AS THE RELIEF WOULD BE A DIRECT VIOLATION OF NJLAD .......... 17

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Cases**

Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000) ....................3
Anspach v. City of Phila., Dep't of Pub. Health, 503 F.3d 256 (3d Cir. 2007) ......10
Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP, 528 F.3d 176 (3d Cir. 2008) ....................13
Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102 (3d Cir. 2010)....................2
C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159 (3d Cir. 2005) ....................10
C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289 (2023)................16
Carlini v. Velez, 947 F. Supp. 2d 482 (D.N.J. 2013) ....................15
Dempsey v. Alston, 405 N.J. Super. 499 (App. Div. 2009) ....................9
ECRI v. McGraw-Hill, Inc., 809 F.2d 223 (3d Cir. 1987) ....................12
EEOC v. Metal Serv. Co., 892 F.2d 341 (3d Cir. 1990)....................16
Ferring Pharms., Inc, v. Watson Pharms., Inc., 765 F.3d 205 (3d Cir. 2014)..........4
Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89 (1990)....................16
Gruntal & Co. v. Steinberg, 843 F. Supp. 1 (D.N.J. 1994)....................4
Holland v. Rosen, 277 F. Supp. 3d 707 (D.N.J. 2017).................... 12, 17
Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186 (3d Cir. 1990)................3, 12
Hunterdon Transformer Co. v. Cook, No. 89-3132, 1990 U.S. Dist. LEXIS 1382 (D.N.J. Feb. 6, 1990) ....................5
In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137 (3d Cir. 1982)................3
In re Revel AC, Inc., 802 F.3d 558 (3d Cir. 2015)....................4
Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3d Cir. 1989).......12
Issa v. Sch. Dist. of Lancaster, 847 F.3d 121 (3d Cir. 2017).................... 15, 17
J&J Snack Foods Corp. v. Nestle USA, Inc., 149 F. Supp. 2d 136 (D.N.J. 2001)..13
J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915 (3d Cir. 2011) .......10
Juul Labs, Inc. v. 4X PODS., 439 F. Supp. 3d 341 (D.N.J. 2020) ....................3
Lehmann v. Toys R Us, Inc., 132 N.J. 587 (1993)....................16
Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553 (3d Cir. 2009) ...12
Mallet & Co. v. Lacayo, 16 F.4th 364 (3d Cir. 2021) ....................4
Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55 (App. Div. 2004)............16
Miller v. Mitchell, 598 F.3d 139 (3d Cir. 2010)....................3
Mirabelli v. Bonta, 607 U.S. 492 (2026) .................... 1, 5, 6, 8
MNI Mgmt. v. Wine King, LLC, 542 F. Supp. 2d 389 (D.N.J. 2008)....................13
Munaf v. Geren, 553 U.S. 674 (2008) ....................2
N.J. Ass'n of Health Care Facilities, Inc. v. Gibbs, 838 F. Supp. 881 (D.N.J. 1993) ....................13
Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms, Co., 290 F.3d 578 (3d Cir. 2002)....................15

Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187 (3d Cir. 1990) ..4
Otsuka Pharm. Co., LTD. v. Torrent Pharms. Ltd., Inc., 99 F. Supp. 3d 461 (D.N.J. 2015) ....13
Peoplestrategy, Inc. v. Lively Emplr. Servs. Inc., No. 20-2640, 2020 U.S. Dist. LEXIS 171475 (D.N.J. Aug. 28, 2020) ....5
Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55 (1978) ....16
Platkin v. Middletown Twp. Bd. of Educ., Nos. A-0037-23, A-0046-23, A-0118-23, 2025 LEXIS 237433 (App. Div. Feb. 10, 2025) .... *passim*
Quad/Tech, Inc. v. Q.I. Press Controls B.V., 701 F. Supp. 2d 644 (E.D. Pa. 2010) ....13
Reilly v. City of Harrisburg, 858 F.3d 173 (3d Cir. 2017). ....3, 4
Rodriguez v. Raymours Furniture Co., 225 N.J. 343 (2016) ....16
Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223 (3d Cir. 2011)....4
Sorber v. Velez, No. 09-3799, 2009 U.S. Dist. LEXIS 98799 (D.N.J. Oct. 23, 2009) ....15
State v. Lagares, 127 N.J. 20 (1992)....11
State v. Pimetel, 461 N.J. Super. 468 (App. Div. 2019)....11
Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27 (2d Cir. 1995)....13
Tracey v. Recovco Mortg. Mgmt. LLC, 451 F. Supp. 3d 337 (D.N.J. 2020) ....13
Vita-Pure, Inc. v. Bhatia, No. 2:14-7831, 2015 U.S. Dist. LEXIS 42655 (D.N.J. Apr. 1, 2015)....5
W. S. Int'l, LLC v. M. Simon Zook, Co., 566 F. App'x 192 (3d Cir. 2014) ....12
Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982).... 17, 18
Winter v. NRDC, Inc., 555 U.S. 7 (2008) ....2
Yakus v. United States, 321 U.S. 414 (1944) ....18

**Statutes**

N.J.S.A. § 10:5-12....1
N.J.S.A. § 10:5-12(f)(1).... 11, 15, 16
N.J.S.A. § 10:5-5(rr) ....15
N.J.S.A. § 18A:36-41....2, 7

**Other Authorities**

Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 et seq....18
New Jersey Law Against Discrimination ("NJLAD") .... *passim*

**Rules**

Fed. R. Civ. P. 65....2
L. Civ. R. 65.1....2

## PRELIMINARY STATEMENT

Plaintiffs seek the extraordinary remedy of a preliminary injunction for an issue that is neither harmful nor emergent. The preliminary injunction seeks to pause the application of the Gender Identity and Expression Policy ("Policy 5145.7"). First and foremost, Plaintiffs have not shown the likelihood of success on the merits as this case is neither analogous to Mirabelli v. Bonta, 607 U.S. 492 (2026) nor in alignment with New Jersey law. See Platkin v. Middletown Twp. Bd. of Educ., Nos. A-0037-23, A-0046-23, A-0118-23, 2025 LEXIS 237433 (App. Div. Feb. 10, 2025). In Platkin, the State Court rejected a change to a school district's gender identity and expression policy that would have required an affirmative duty to inform parents of a student's gender change.

Second, Plaintiffs utterly fail to show any harm, let alone irreparable harm. The District has had a version of this policy for years. If irreparable harm exists – and it does not - this injunction would have been filed previously. It was not, which is proof that no harm occurred.

Moreover, even if this Court were to consider the preliminary injunction – and it should not – the injunction would cause more harm to the District and Defendants then any harm Plaintiffs allege. Pausing the District's policy would render student protections based on protective class inert, leading to violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12. It would likely force

Districts to be in violation of N.J.S.A. § 18A:36-41, which requires school districts to adopt a gender identity and expression policy. The Defendants cannot violate State laws and principles. Therefore, this Court must deny the Plaintiffs' Motion for Preliminary Injunction.

## PROCEDURAL AND FACTUAL HISTORY

The facts and procedural history are fully set forth in the accompanying Certification of Frank P. Cavallo, Jr., Esquire and Melissa S. Kolaski, Esquire.

## LEGAL ARGUMENT

### I. THIS COURT MUST DENY PLAINTIFFS' MOTION AS IT DOES NOT MEET THE LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 governs a court's issuance of a preliminary injunction. Fed. R. Civ. P. 65; L. Civ. R. 65.1. "A preliminary injunction is an extraordinary remedy that is never to be awarded as of right." Winter v. NRDC, Inc., 555 U.S. 7, 24 (2008) (citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). In considering whether to grant a preliminary injunction, courts must decide whether the party seeking the injunction has shown: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) (quoting Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir.

2010)). The Third Circuit places particular weight on the first two factors, instructing that it "cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982)); See also Juul Labs, Inc. v. 4X PODS., 439 F. Supp. 3d 341, 350 (D.N.J. 2020) ("A court will consider all four factors, but the first two are essential . . . A court may not grant injunctive relief, 'regardless of what the equities seem to require,' unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm." (quoting Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000)). If a court finds that the first two factors weigh in favor of the moving party, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017).

Here, Plaintiffs have not satisfied the preliminary injunction standard. This case does not have a likelihood of success on the merits, as the Plaintiffs' reliance on Supreme Court case law is inconsistent with the matter before this Court and the requested holding would be inconsistent with already established State precedent and laws. Moreover, there is no harm, let alone irreparable harm, to these Plaintiffs, as this policy has been unchallenged for years. Finally, while this Court need not

even consider the final two factors as Plaintiffs failed to satisfy the first two, even if this Court were to consider them, it proves the damage of this injunction is much greater to the District/Defendants, as they would be forced to violate State discrimination laws. This Court must deny this Motion.

### A. PLAINTIFFS DO NOT HAVE A LIKELIHOOD TO SUCCEED ON THE MERITS OF THIS CASE

The moving party bears the burden to prove its likelihood of success on the merits of its case. Ferring Pharms., Inc, v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014) (citing Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990)). The moving party must "'demonstrate that it can win on the merits,' which involves a showing that its chances of establishing each of the elements of the claim are 'significantly better than negligible.'" Mallet & Co. v. Lacayo, 16 F.4th 364, 380 (3d Cir. 2021) (quoting Reilly, 858 F.3d at 179 n.3)). Likelihood of success, however, does not require "a more-likely-than-not showing of success." Reilly, 858 F.3d at 179 n.3. Rather, "a sufficient degree of success for a strong showing exists if there is a 'reasonable chance, or probability, of winning.'" In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015) (quoting Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). Generally, "preliminary injunction[s] cannot be issued when there are disputed issues of fact." Gruntal & Co. v. Steinberg, 843 F. Supp. 1, 16 (D.N.J. 1994) (quoting Hunterdon Transformer Co. v. Cook, No. 89-3132, 1990 U.S. Dist. LEXIS 1382 at

*4 (D.N.J. Feb. 6, 1990); See also Peoplestrategy, Inc. v. Lively Emplr. Servs. Inc., No. 20-2640, 2020 U.S. Dist. LEXIS 171475 at *9 (D.N.J. Aug. 28, 2020) ("A preliminary injunction also should not be issued where material issues of fact are in dispute." (citing Vita-Pure, Inc. v. Bhatia, No. 2:14-7831, 2015 U.S. Dist. LEXIS 42655 (D.N.J. Apr. 1, 2015)).

### i. PLAINTIFFS' RELIANCE ON MIRABELLI IS INCONSISTENT WITH THE CIRCUMSTANCES BEFORE THIS COURT

Plaintiffs incorrectly rely upon Mirabelli v. Bonta for its interpretation that the District and Defendants' policies violate the First Amendment and Fourteenth Amendment. The circumstances and school district policies in Mirabelli are entirely different than the District's and Defendants' circumstances and policies. The issue within Mirabelli was the following:

> During litigation, the school district claimed that state law, as interpreted by the California attorney general and Department of Education, required it to adopt these policies. So the teachers added state officials as defendants, and parents of California schoolchildren joined the lawsuit as plaintiffs. Relying on their own experiences and guidance documents issued by state officials, plaintiffs alleged that California's policies permitted disclosure of a student's gender transitioning at school only if the student consented. Plaintiffs claimed that these policies violated their rights under the Free Exercise Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment
>
> 607 U.S. at 493.

In Mirabelli, a preliminary injunction was enforced halting the use of a highly restrictive policy that prohibited school districts from informing parents about their student's gender identity and expression without first receiving permission from the student. Contrary to Plaintiffs' belief, the issue in Mirabelli is not the issue in this case. The District's and Defendants' policies are not that restrictive; in fact, the requirements in the District's policy are ultimately discretionary in terms of parental notice of a student's gender identity and expression. New Jersey law states:

> The New Jersey legislatures adopted the following law regarding transgender students:
>
> a. *The Commissioner of Education shall develop and distribute to school districts guidelines concerning transgender students*. The purposes of the guidelines shall be to provide direction for schools in addressing common issues concerning the needs of transgender students, and to assist schools in establishing policies and procedures that ensure a supportive and nondiscriminatory environment for transgender students.
>
> b. The guidelines developed by the commissioner shall include, but not be limited to, information and guidance regarding the following:
>
> (1) definitions of terms relevant to an understanding of transgender issues, including gender identity, gender expression, and transgender person;
>
> (2) maintaining a safe and supportive learning environment that is free from discrimination and harassment for transgender students, including students going through a gender transition;
>
> (3) confidentiality and privacy concerns, including ensuring that school personnel do not disclose information that may reveal a student's transgender status except as allowed by law, and advising schools to work with the student to create an appropriate confidentiality plan regarding the student's transgender or transitioning status;
>
> (4) procedures for school records, including maintaining a separate official record for each student that contains the student's legal name

> and biological gender and changing a student's official record upon receipt of documentation of a legal change in name or gender;
>
> (5) ensuring that a transgender student is addressed at school by the name and pronoun preferred by the student that corresponds to the student's gender identity, regardless of whether a legal name change or change in official school records has occurred;
>
> (6) issuing school documentation such as student identification cards in the name preferred by the student that corresponds to the student's gender identity, and permitting a transgender student to dress in accordance with the student's gender identity;
>
> . . .
>
> (10) ensuring that school counselors are knowledgeable regarding issues and concerns relevant to transgender students; and
>
> . . .
>
> N.J.S.A. § 18A:36-41 (emphasis added)

Following the enactment of the law and directive, the Commissioner of Education issued guidance that complied with NJLAD and N.J.S.A. § 18A:36-41. (See Exhibit A – Commissioner of Education Guidance). Within the guidance, it states the following:

> A school district shall accept a student's asserted gender identity; parental consent is not required. Further, a student need not meet any threshold diagnosis or treatment requirements to have his or her gender identity recognized and respected by the district, school, or school personnel. Nor is a legal or court-ordered name change required. *There is no affirmative duty for any school district personnel to notify a student's parent or guardian of the student's gender identity or expression.*
>
> See Exhibit A (Emphasis added).

While the guidance does not require an affirmative duty to inform a guardian, it also does *not* prohibit a school district from having the discretion to inform a

parent. Therefore, the District can inform parents about a student's gender identity or expression. This invalidates Plaintiffs' reliance upon Mirabelli where a District was absolutely restricted from informing parents about a student's gender identity or expression without first receiving a student's consent.

Here, the District adopted Policy 5145.7 based upon the Commissioner of Education's guidance. (See Exhibit B – District's Policy 5145.7). Within the Policy and contrary to the policy in Mirabelli, student consent prior to a parental notification is not required. The District's policy states the following:

> Pupils who do not want their parents/guardians to know about their transgender status shall be addressed on a case-by-case basis. In some cases, notifying parents/guardians carries risk for the pupil, such as being kicked out of the home. Prior to the notification of any parent/guardian regarding the transition process, school staff should work closely with the pupil to assess the degree, to which, if any, the parents/guardians will be involved in the process and must consider the health, well-being, and safety of the transitioning pupil. The school counselor shall balance the rights of the pupil needing support and the requirement that parents/guardians be kept informed about their child. In accordance with law, parents/guardians and/or the appropriate local officials shall be informed when there is any suspicion of injury or harm to the pupil or other pupils.
>
> See Exhibit B.

This guidance does not prohibit the District from informing parents about their student's gender identity and expression. Instead, the contact with a parent is discretionary and made on a case-by-case basis. Plaintiffs do make any argument or have any supporting authority that prove the District's and Defendants'

guidance/policies are otherwise restrictive and/or unconstitutional. Plaintiffs do not have a reasonable chance at a success in this matter. Therefore, this Court must not find this factor in Plaintiffs' favor.

### ii. THE STATE OF NEW JERSEY HAS PRECEDENT THAT SUPPORTS DEFENDANTS' POSITION AND ENFORCEMENT OF ITS POLICIES

The New Jersey Appellate Division previously ruled on a preliminary injunction regarding Plaintiffs' exact underlying position. In Platkin, the Court upheld a preliminary injunction that restricted a school district from changing its gender identity and expression policy that would require it be an affirmative duty for school district staff members to notify a student's parent if a student requested a gender identity change. 2025 LEXIS 237433. The relief denied in Platkin, to require a school district to have an affirmative duty to inform parents of a student's gender identity change, is ultimately the same relief Plaintiffs seek from this Court.

In Platkin, the Court held "a review of the record confirms to this Court that the continuation of the policy without an injunction does not infringe on parents' fundamental rights under the Fourteenth Amendment." Id. at *29-30. Although parents have the right to control their child's upbringings, Dempsey v. Alston, 405 N.J. Super. 499, 512 (App. Div. 2009), caselaw from the United States Supreme Court, the Third Court, and New Jersey has not extended this right to require schools to affirmatively provide parents with information. See also Anspach v. City of Phila.,

Dep't of Pub. Health, 503 F.3d 256, 269 (3d Cir. 2007) (finding no "constitutional obligation on state actors to contact parents of a minor"). "[A] conflict with the parents' liberty interest will not be lightly found, and, indeed, only occurs when there is some 'manipulative, coercive, or restraining conduct by the State.'" J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 933-34 (3d Cir. 2011) (quoting Anspach, 503 F.3d at 266). "Parents' liberty will only be implicated if the state's action 'deprived them of their right to make decisions concerning their child,' and not when the action merely 'complicated the making and implementation of those decisions.'" Id. at 934 (quoting C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159,184 (3d Cir. 2005)).

The Court reasoned that "the preliminary injunction [did] not implicate or interfere with parents' rights under the Fourteenth Amendment. The Existing Policies [did] not impose the kind of 'constraint or compulsion' that the United States Supreme Court and the New Jersey Supreme Court have found violative of parental rights." Platkin, 2025 LEXIS 237433 at *31; See Anspach, 503 F.3d at 264. "Instead, the Existing Policies direct[ed] school staff to refer to students by their preferred gender identity without requiring the school to obtain parental consent or to affirmatively notify parents." Platkin, 2025 LEXIS 237433 at *31. Therefore, the Court found "[b]ecause the injunctions [did] not intrude on parents' constitutionally protected rights, they should be upheld so as they are "'rationally related to the

achievement of a legitimate state interest.'" Platkin, 2025 LEXIS 237433 at *31; State v. Pimetel, 461 N.J. Super. 468, 491 (App. Div. 2019) (quoting State v. Lagares, 127 N.J. 20, 34 (1992)) (internal quotation marks omitted). In Platkin, the Court found the Attorney General had a legitimate interest in preventing discrimination based on gender identity or expression. Platkin, 2025 LEXIS 237433 at *32; N.J.S.A. § 10:5-12(f)(1). The Attorney General's action, in enjoining the school districts from affirmatively disclosing a students' transgender status to their parents, was rationally related to that goal. Id.

While State Court decisions are not binding on this Court, the Platkin decision gives tremendous insight into whether Plaintiffs would have a likelihood of success on the merits. The New Jersey Courts have already held that under the Fourteenth Amendment, Defendants' policies are not a violation of the Fourteenth Amendment. These policies do not manipulate, coercive, or restrain parents, including Plaintiffs, from raising their children. The lack of an affirmative duty to disclose a student's transgender status does not restrict a parents' right to raise a child. Additionally, there is nothing prohibiting a student from informing their parent of their gender identity. Therefore, based upon the decisions in State Court and the NJLAD, this Court should find Plaintiffs have not shown how the otherwise established State law is inconsistent with federal precedent and would likely be successful. This Court

should consider following the persuasive principles in Platkin and deny the Motion for Preliminary Injunction.

### B. PLAINTIFFS HAVE NOT AND WILL NOT SUFFER ANY IRREPARABLE HARM.

The moving party "has the burden of proving a 'clear showing of immediate irreparable injury.'" Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 205 (3d Cir. 1990) (quoting ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 225 (3d Cir. 1987)). To establish irreparable harm, a "plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting plaintiff from the harm." Holland v. Rosen, 277 F. Supp. 3d 707, 725 (D.N.J. 2017) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)). On the one hand, "injury measured in solely monetary terms cannot constitute irreparable harm." Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009) (citations omitted). On the other hand, irreparable harm may exist "where a party may be forced to shut down without the requested injunctive relief." W. S. Int'l, LLC v. M. Simon Zook, Co., 566 F. App'x 192, 197 (3d Cir. 2014) (citing Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 802 (3d Cir. 1989)). Where the movant seeks a preliminary injunction that "will alter the status quo, [it] must meet a higher standard of showing irreparable harm in the absence of an injunction." Bennington Foods LLC v. St. Croix Renaissance, Grp.,

LLP, 528 F.3d 176, 179 (3d Cir. 2008) (citing Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 33-34 (2d Cir. 1995)); See also Tracey v. Recovco Mortg. Mgmt. LLC, 451 F. Supp. 3d 337, 342 (D.N.J. 2020) ("The standard to obtain preliminary injunctive relief is heavy, particularly where injunctive relief alters the status quo").

In addition, a movant's delay in requesting injunctive relief "undercuts the urgency that forms the cornerstone of injunctive relief; indeed, it indicates a lack of urgency." Otsuka Pharm. Co., LTD. v. Torrent Pharms. Ltd., Inc., 99 F. Supp. 3d 461, 505 (D.N.J. 2015) (citing Quad/Tech, Inc. v. Q.I. Press Controls B.V., 701 F. Supp. 2d 644 (E.D. Pa. 2010)). Thus, "inexcusable delay in seeking a preliminary injunction may defeat a movant's assertion of irreparable harm." MNI Mgmt. v. Wine King, LLC, 542 F. Supp. 2d 389, 403 (D.N.J. 2008); See also J&J Snack Foods Corp. v. Nestle USA, Inc., 149 F. Supp. 2d 136, 158 (D.N.J. 2001) ("[P]laintiff's eight month delay in seeking a preliminary injunction against [the defendant] also undercuts its present claim of irreparable harm."); N.J. Ass'n of Health Care Facilities, Inc. v. Gibbs, 838 F. Supp. 881, 928 (D.N.J. 1993) ("[D]elay in seeking preliminary relief cuts against finding irreparable injury.")

Here, there is no harm, let alone irreparable harm, to Plaintiffs. A preliminary injunction is appropriate when it is the only way to protect Plaintiff. The only "harm" to Plaintiffs is the simple fact it does not like or approve of the District and

Defendants' policies, which is not the standard to meet for a preliminary injunction. If there truly was irreparable harm, Plaintiffs would not have waited years to file this matter. As stated in District Policy 5145.7, Policy 5145.7 is a combination of the District's Policy 5756, that was readopted on September 15, 2015 and old Policy 5145.7, which had a final adoption of June 24, 2020. (Exhibit B). Therefore, while the newest version of Policy 5145.7 was adopted March 25, 2026, the Policy simply adopted and combined years old prior policies that the District has been following for years. (Exhibit B). Therefore, if Plaintiff was harmed from the date of the adoption of the policy, it could have filed then. The substantial waiting to file this matter is proof there is no irreparable harm.

Finally, and most importantly, a preliminary injunction is not granted if it affects the status quo. The issuance of a preliminary injunction that restricts the use of policy would outright force the District and Defendants to violate the NJLAD. The District and Defendants have an affirmative duty not to discriminate against a person for their gender identity or affirmations. The duty to affirmatively inform parents of a child's gender identity is pointing out a specific group. Moreover, the status quo is interrupted as the school districts will no longer consider, on a case-by-case basis, each student and the information that is given to parents. An outright disclosure could put a student in harm's way if the parents do not approve. A school district has an affirmative duty to protect its students, especially from harm, and the

preliminary injunction Plaintiffs request result in the opposite. Therefore, Plaintiff has not shown, with the highest bar and scrutiny, that it will suffer irreparable harm.

### C. THE RELIEF WILL RESULT IN GREATER HARM TO THE DEFENDANTS AS THE PAUSING OF THIS POLICY VIOLATES NJLAD

This Court must weigh "the potential injury to the plaintiffs without this injunction versus the potential injury to defendant with it in place." Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 143 (3d Cir. 2017) (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms, Co., 290 F.3d 578, 596 (3d Cir. 2002)). In other words, "[i]f granting the injunction will cause greater harm to the [d]efendant than the [p]laintiff would suffer if the injunction were denied, the Court should generally not grant the injunction." Carlini v. Velez, 947 F. Supp. 2d 482, 488 (D.N.J. 2013) (quoting Sorber v. Velez, No. 09-3799, 2009 U.S. Dist. LEXIS 98799 at *10 (D.N.J. Oct. 23, 2009)).

The injunction, without a doubt, causes greater harm to the District and Defendants as the pausing of the policy and requiring a parental notification is in direct violation of NJLAD. NJLAD makes it "unlawful for schools to discriminate against a student based on their gender identity or expressions," N.J.S.A. § 10:5-12(f)(1), which the statute defines as "having or being perceived as having a gender related identity or expression whether or not stereotypically associated with a person's assigned sex at birth." N.J.S.A. § 10:5-5(rr); See also C.V. ex rel. C.V. v.

Waterford Twp. Bd. of Educ., 255 N.J. 289, 311 (2023) (recognizing that a student may state a claim under the NJLAD for discriminatory conduct based on their gender identity or expression). Claims of unlawful discrimination in violation of NJLAD can be based on two separate theories of harm: (1) disparate treatment; and (2) disparate impact. Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 81-82 (1978). "Disparate treatment is demonstrated when a member of 'a protected group is shown to have been singled out and treated less favorably than other similarly situated on the basis of an impermissible criterion' . . ." Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 74 (App. Div. 2004) (quoting EEOC v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990)). "Disparate impact" occurs where the treatment of different groups "fall[s] more harshly on one group than another." Peper, 77 N.J. at 81. NJLAD prohibits discrimination based on "gender identity or expression." N.J.S.A. § 10:5-12(f)(1). This applies to disparate treatment and disparate impact. Peper, 77 N.J. at 81-82; See also N.J.S.A. § 10:5-12(f)(1) (prohibiting any place of public accommodation from engaging in discrimination, whether "directly or indirectly"). The New Jersey Supreme Court has recognized that the "eradication of discrimination is a public interest", Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 356 (2016), and that "discrimination based on gender is 'peculiarly repugnant.'" Lehmann v. Toys R Us, Inc., 132 N.J. 587, 600 (1993) (quoting Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 96 (1990)).

Here, the Court only reaches this factor if the first two are met. If this Court does consider this factor and if the Court were to remove the Defendants' discretion to disclose a student's transgender status and otherwise make it a requirement to affirmatively disclose the status, it will require the District to violate NJLAD. To follow the injunction, the District would necessarily be publicly and openly discriminating against transgender students and treating a group of students more harshly than others simply due to their gender identity and expression. This would be a direct violation of NJLAD and opens Defendants to legal liability. Ultimately, as discussed above, there is no harm against Plaintiffs. The harm that would occur, if the preliminary injunction is granted, is solely to the District and Defendants as it would be mandated to violate State discrimination laws. This Court must deny this Motion.

**D. THE PUBLIC INTEREST DOES NOT FAVOR RELIEF AS THE RELIEF WOULD BE A DIRECT VIOLATION OF NJLAD**

Finally, Courts must balance the "public consequences in employing the extraordinary remedy of injunction." Holland, 277 F. Supp. 3d at 725 (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). While weighing whether the public interest favors a preliminary injunction "is often fairly routine," Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 143 (3d Cir. 2017) (internal quotations omitted), "'where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot

compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff.'" Weinberger, 456 U.S. at 312-13 (quoting Yakus v. United States, 321 U.S. 414, 440 (1944)).

Here, the public interest does not favor a direct violation of NJLAD. If this Court were to grant the preliminary injunction, it would knowingly be forcing the District and the Defendants', including the State of New Jersey, to violate its State's discrimination statute. The NJLAD is more expansive than the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and includes the protected class of gender identity and expression. While the ADA does not protect these categories, it is permissible for the NJLAD to include additional categories of protection, such as gender identity and expression, as long as it includes the protection of the categories within the ADA. It does so. Therefore, the public interest includes the protection of the class of gender identity and expression. The granting of this preliminary injunction would be requiring and forcing a State and school districts to violate its State's statutes. That is not in the public interest.

## **CONCLUSION**

This Court must deny Plaintiffs' Motion for Order to Show Cause and deny the Preliminary Injunction request as it does not meet the legal standards required.

PARKER McCAY, P.A.

/s/ *Frank P. Cavallo, Jr.*
Frank P. Cavallo, Jr., Esquire

/s/ *Melissa S. Kolaski*
Melissa S. Kolaski, Esquire

Attorney for Defendant, Marilyn Dunham,
In her capacity as President of the
Burlington Township Board of Education

Dated: August 25, 2026
4906-5451-5402, v. 1