**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA LEMA, ROBERT SHULL, CHRISTOPHER STADULIS, LAURIE VALENTI, and IRMA NUNEZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>JENNIFER DAVENPORT, in her official capacity as Attorney General of the State of New Jersey; LILY LAUX, in her official capacity as Acting Commissioner of the New Jersey Department of Education; JENNIFER HARRIS, in her official capacity as President of the HACKENSACK BOARD OF EDUCATION; MARILYN DUNHAM, in her capacity as President of the BURLINGTON TOWNSHIP BOARD OF EDUCATION; BRENDAN McISAAC, in his official capacity as President of the NORTH HUNTERDON-VORHEES REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION; DANIEL MacDONNELL, in his official capacity as President of the BETHLEHEM TOWNSHIP BOARD OF EDUCATION; and HASANI K. COUNCIL, in his official capacity as President of the NEWARK BOARD OF EDUCATION,<br><br>*Defendants*. | Civil Action No.:<br>3:26-cv-4682<br>(RK)(JTQ) |

# [PROPOSED] BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY, EDUCATION LAW CENTER, AND GARDEN STATE EQUALITY IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Ezra D. Rosenberg (NJ 012671974)
Dillon S. Reisman (NJ 374142021)
Jeanne LoCicero (NJ 02052000)
American Civil Liberties Union
of New Jersey Foundation
P.O. Box 32159
Newark, New Jersey 07102
(973) 854-1714
erosenberg@aclu-nj.org

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... ii
TABLE OF AUTHORITIES .......... iii
INTEREST OF AMICI CURIAE .......... 1
PRELIMINARY STATEMENT .......... 3
ARGUMENT .......... 5

I. The Transgender Student Guidance and School Board Policies at issue do not conflict with the United States Constitution. .......... 5

A. The Guidance and School Board Policies do not violate a parent's free exercise rights because they have not met even the preliminarily required threshold under *Mirabelli* to assert such a claim. .......... 11

B. The Guidance and School Board Policies do not violate a parent's substantive due process rights in the rearing of their child because they do not compel, coerce, or constrain conduct by students or their parents .......... 13

II. The state's Transgender Student Guidance and the School Board Policies serve the all-important goal of ensuring transgender students can enjoy safe and nondiscriminatory school environments. .......... 15

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

### CASES

*Anspach ex rel. Anspach v. City of Philadelphia*, 503 F.3d 256 (3d Cir. 2007)13, 14,

*Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305 (11th Cir. 1989) .............14

*Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917 (3d Cir. 1974)...............................................................................................15, 16

*C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159 (3d Cir. 2005) ...............................13

*Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980) .........................................................15

*Doe v. Ladapo*, 676 F. Supp. 3d 1205 (N.D. Fla. 2023)........................................19

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018)6, 17, 19

*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020)........................16

*Gruenke v. Seip*, 225 F.3d 290 (3d Cir. 2000).......................................................14

*J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011) .........13

*Mahmoud v. Taylor*, 606 U.S. 522 (2025)...........................................................2, 8

*Mirabelli v. Bonta*, 607 U.S. 492 (2026)........................................................*passim*

*Parham v. J.R.*, 442 U.S. 584 (1979) .....................................................................8

*Parents United for Better Schs., Inc. v. Sch. Dist. of Phila. Bd. of Educ.*, 148 F.3d 260 (3d Cir. 1998).................................................................................15

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510 (1925)...................................................................................................13

*Prince v. Massachusetts*, 321 U.S. 158 (1944) ......................................................13

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ............................6, 15, 16

*St. Mary Catholic Parish v. Roy*, No. 25-581, 2026 WL 1052111 (April 20, 2026) .2

*Troxel v. Granville*, 530 U.S. 57 (2000)................................................................13

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. (2008).............5, 12

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) .........................................................17

**REGULATIONS & STATUTES**

Family Education Rights Privacy Act, 20 U.S.C. § 1232g........................................9

N.J. Admin. Code § 6A:7-1.1 ..........................................................................16, 19

N.J. Stat. Ann. § 18A:36-41 ..................................................................................18

N.J. Stat. Ann. § 18A:36-41(b)(2).........................................................................18

N.J. Stat. Ann. § 18A:37-15(d) ..............................................................................9

New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 to -50 ......16, 19

**OTHER AUTHORITIES**

GLSEN, *School Climate for LGBTQ+ Students in New Jersey* (2023), https://maps.glsen.org/wp-content/uploads/2023/02/GLSEN_2021_NSCS_State_Snapshots_NJ.pdf ..18

Hannah Gross, *Transgender Students: How Controversy Over NJ School Policy Is Taking a Toll*, N.J. Spotlight News (Oct. 31, 2023), https://www.njspotlightnews.org/special-report/nj-transgender-students-say-school-policy-controversy-changes-take-toll .............................................10

Joseph G. Kosciw, Caitlin M. Clark & Leesh Menard, GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* (2022), https://www.glsen.org/sites/default/files/2022-10/NSCS-2021-Full-Report.pdf..........................................................................17

Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students — 19 States and Large Urban School Districts, 2017*, 68 Morbidity & Mortality Wkly. Rep. 67 (2019) ..............................17

Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf....................................................................................................10

The Trevor Project, *2022 National Survey on LGBTQ Youth Mental Health by State: New Jersey* (2022), https://www.thetrevorproject.org/wp-content/uploads/2022/12/The-Trevor-Project-2022-National-Survey-on-LGBTQ-Youth-Mental-Health-by-State-New-Jersey.pdf .............................18

*Vainieri Huttle & Caride Bill to Create Safe & Welcoming School Environment for Trans Students Now Law*, Insider NJ (July 23, 2017), https://www.insidernj.com/press-release/vainieri-huttle-caride-bill-create-safe-welcoming-school-environment-trans-students-now-law .....................18

## INTEREST OF AMICI CURIAE[1]

For more than 60 years, the **American Civil Liberties Union of New Jersey** ("**ACLU-NJ**") has defended liberty and justice guided by the vision of a fair and equitable New Jersey for all. The ACLU-NJ's mission is to preserve, advance, and extend the individual rights and liberties guaranteed to every New Jerseyan by the State and Federal Constitutions in courts, legislative bodies, and communities. Founded in 1960 and based in Newark, the ACLU-NJ is a nonpartisan organization that operates on several fronts—legal, political, cultural—to bring about systemic change and build a more equitable society. In all these arenas, the ACLU-NJ advocates for the rights of LGBTQ+ individuals, including children, on equal terms with all others. ACLU-NJ members and supporters include transgender and gender-nonconforming students and their parents and guardians.

Founded in 1973, **Education Law Center ("ELC")** is a non-profit and non-partisan legal advocacy organization that pursues justice and equity for public school students by enforcing their right to a high-quality education in safe, equitable, non-discriminatory, integrated, and well-funded learning environments.

[1] The parties have consented to the filing of this amici brief. Under Fed. R. App. P. 29(a)(4)(E), the undersigned counsel certifies that no counsel for a party authored this brief in whole or in part and that no person other than amici curiae made a monetary contribution intended to fund the preparation or submission of this brief.

ELC has long worked to ensure that public schools create and promote safe, inclusive learning environments, particularly for marginalized groups of students, including LGBTQ+ students. ELC has extensive experience litigating on behalf of students in state and federal courts on constitutional and statutory issues. ELC has served as an amicus curiae in numerous state and federal cases, including *Mahmoud v. Taylor*, 606 U.S. 522 (2025), and, most recently, has filed to serve as amicus in *St. Mary Catholic Parish v. Roy*, No. 25-581, 2026 WL 1052111 (U.S. Apr. 20, 2026) before the United States Supreme Court.

**Garden State Equality Education Fund ("GSE")** was founded in 2004 and is the largest LGBTQ+ advocacy organization in New Jersey, with more than 150,000 members. Its mission is to provide quality, innovative community programs, educate and train service providers, and pass pro-equality policies to protect and meet the needs of LGBTQ+ New Jerseyans. In the arena of education, GSE engages in advocacy, policy work, and trainings to ensure that New Jersey schools are safe and affirming environments for transgender and nonbinary students. GSE engages with stakeholders in New Jersey schools at all levels, including by:

- Providing training and guidance to school administrators and staff,
- Advocating for students at state and local board of education meetings,
- Presenting at student assemblies,

- Supporting parents of transgender students, and
- Providing direct support to and programming for transgender and nonbinary students.

**PRELIMINARY STATEMENT**

Plaintiffs' challenge to New Jersey's Transgender Student Guidance and to implementing School Board Policies is wholly based on completely inapposite precedent: the Supreme Court's non-merits decision in *Mirabelli v. Bonta*, 607 U.S. 492 (2026). *Mirabelli* concerned a context-dependent analysis of California laws different from the Guidance and Policies in this case. Further, it was decided on review of a stay of a *permanent* injunction, issued after a long period of litigation involving discovery and summary judgment proceedings (although the per curiam order itself was issued without the benefits of full merits briefing or oral argument). In this case, on Day One of litigation, Plaintiffs nevertheless seek the extraordinary relief of a preliminary injunction without any supporting analysis other than pointing to *Mirabelli* and even less supporting factual allegations, let alone sworn to facts. Indeed, Plaintiffs' claims fail to even qualify for review under *Mirabelli* at all, since they fail to allege they even sought the exemptions at issue in *Mirabelli*.

Not surprisingly, Plaintiffs have not quoted any of the plain language of the Guidance or Policies they claim places this case "on all fours" with *Mirabelli*. That

is because, on their face, the Guidance and the Policies are consistent with the requirements preliminarily set by *Mirabelli*. Several of the School Board Policies cited by Plaintiffs expressly require schools to consider a student's requests for nondisclosure on a "case-by-case basis" and recognize that there are circumstances where a parent must be kept informed about their student's gender identity, such as when required for the "health and safety" of the student or "as allowed by law." Plaintiffs fail to show any entitlement to an injunction for the simple fact that they fail to show any evidence that New Jersey's policies are inconsistent with the state of the law generally or *Mirabelli* in particular. *See* Section I.

Plaintiffs' request for injunctive relief against the Guidance and Policies is both impermissibly dilatory and unreasonably hasty. Plaintiffs' application is being made, not only as the State has demonstrated in its brief, years after the promulgation of the Guidance and Policies, but also at the earliest stage of proceedings, before there has been any discovery to test their right to bring this suit; their alleged irreparable harm; the balance of the equities; and the public interest. In that regard, Plaintiffs fail to address just how important the Guidance and Policies are to the safety and wellbeing of New Jersey's transgender students. Transgender and gender nonconforming students face an immense number of obstacles to their education and mental health stemming from peer harassment, familial rejection, and social stigma. To address this, New Jersey's Transgender

Student Guidance and the School Board Policies recommend and implement standards that facilitate how schools can ensure a healthy and supportive environment for all students through respect for a student's asserted gender identity. These policies serve the public interest in keeping students safe. *See* Section II.

For these reasons, amici urge the Court to reject Plaintiffs' attack on New Jersey's policies protecting its students.

## ARGUMENT

### I. The Transgender Student Guidance and School Board Policies at issue do not conflict with the United States Constitution.

Plaintiffs' entire motion rises or falls with the Supreme Court's recent decision in *Mirabelli v. Bonta*, which concerned the complex interplay of various California laws and how they may have influenced school parental nondisclosure policies. 607 U.S. 492 (2026). As Plaintiffs mistakenly put it, New Jersey's policies are "on all fours" with California's and therefore barred by the Supreme Court's preliminary view of the merits of the legitimacy of California's laws. To the contrary, on their face, the Guidance and School Board Policies are consistent with the Supreme Court's per curiam order in *Mirabelli*.[2]

[2] We further note that while the five school board policies cited by the Plaintiffs are similar, they are not identical. This may include differences that impact how they are implemented in practice. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (explaining that judicial restraint may be

In fact, *Mirabelli* recognized that there are times when parental nondisclosure will be appropriate, just as New Jersey's policies allow. To the extent that Plaintiffs desire schools to adopt stricter policies of absolute, proactive disclosure or in-school surveillance of gender expression, *Mirabelli* required no such thing.

*Mirabelli* was a limited and solely preliminary decision, issued after extensive litigation, focused narrowly on the context-dependent interaction of various California laws different from New Jersey's Guidance and the State Board Policies. In no way does *Mirabelli* invalidate the core tenets of New Jersey's policies, which recognize that our educational institutions have a compelling interest in ensuring safe, non-discriminatory learning environments. *See Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 528 (3d Cir. 2018) (recognizing a school's vital interest in protecting transgender students from harassment). There can be no "reasonable probability of eventual success in the litigation" where Plaintiffs' argument has no adequate basis in the only caselaw they cite. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). For this reason alone, as more fully explained below, Plaintiffs' motion should be denied. The New Jersey

---

appropriate where a facial challenge does not reference how a challenged act is implemented in practice, depriving the court the "occasion to construe the law in the context of actual disputes").

Transgender Student Guidance and State Board Policies at issue are consistent with *Mirabelli v. Bonta*.

Plaintiffs' reliance on *Mirabelli* is unavailing for at least three major reasons. First, the case came to the Supreme Court after over two years of complex litigation and proceedings, including class certification hearings resulting in the certification of a class with separate subclasses, discovery, summary judgment motion practice, and the issue of a permanent injunction. *Mirabelli*, 607 U.S. at 494-95. This case, of course, is at Day One. It relies entirely on a threadbare brief that does not even quote the challenged policies.

Second, because the *Mirabelli* decision was limited to a review of an application to vacate a Court of Appeals order staying the injunction, the majority's per curiam decision was, as noted by three justices in concurrence, necessarily "preliminary." *Id.* at 500. (Barrett, J., concurring). The Court limited its analysis to an assessment of the plaintiffs' likelihood of success on the merits and simply reinstated an injunction entered by a lower court pending further review on the merits, leaving open very important questions that will shape this changing area of jurisprudence in the future.

Third, and most importantly, New Jersey's policies easily satisfy the preliminary bar set by *Mirabelli*. In *Mirabelli*, the Supreme Court considered claims by California parents regarding California schools' alleged refusal to give

them information about their students' gender identity. 607 U.S. at 493. One student's parents alleged that they suffered a concrete injury when a school withheld information about the child's gender identity after the parents asked about it. *Id.* at 494. Another student's parents, who had religious objections to "gender transitioning," alleged that a school withheld information about their child's gender identity that was having a serious impact on their child's mental health. *Id.* at 493.

The Court applied principles derived from both the Free Exercise Clause and the Fourteenth Amendment's Due Process Clause in finding that the parents would likely succeed on the merits of their claims against the school district and the state. On the issue of the parents' free exercise rights, the Court found that the overall effect of California's policies presented a likelihood of violating the "right of parents to guide the religious development of their children" by failing to allow "religious exemptions" to the "unconsented facilitation of a child's gender transition." *Id.* 496-97 (citing *Mahmoud v. Taylor*, 606 U.S. 522, 559 (2025)). The Court likewise found that the practices of some California school districts likely violated the parents' due process "right not to be shut out of participation in decisions regarding their children's mental health" because it barred the disclosure of information that had "important bearing on a child's mental health." *Id.* at 497 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979)).

But in so holding, *Mirabelli* also held that schools must assess the safety of disclosing information to parents about a student's gender identity before doing so. *Mirabelli*, 607 U.S. at 497 (finding that school policies may prohibit disclosure "to parents who would engage in abuse"). Here, New Jersey's policies explicitly recognize that "the health and safety of a student" are essential factors when deciding whether a school must disclose or withhold information to a parent.[3] Ex. A: Verified Complaint Pt. 1 of 3, ECF 23-3, at 31 [State Transgender Student Guidance]. *See also* Ex. A: Verified Complaint Pt. 2 of 3, ECF 23-4, at 1, 8, 16, 21 [Burlington Township Policy 5145.7, North Hunterdon-Voorhees Policy 5145.7, Bethlehem Township Policy 5756, Newark Policy 5145.7]. All of the challenged policies in this case therefore meet this *Mirabelli* standard. Four of the five policies challenged by Plaintiffs do so expressly, mandating that schools "balance" the interests of the student with the requirement "that parents/guardians be kept informed about their child." *See, e.g.*, Ex. A: Verified Complaint Pt. 1 of 3, ECF 23-3, at 35 [Hackensack Policy 5756]; Ex. A: Verified Complaint Pt. 2 of 3, ECF 23-4, at 1, 8, 21 [Burlington Township Policy 5145.7, North Hunterdon-Voorhees Policy 5145.7, Newark Policy 5145.7]. To that end, those board policies implement

---

[3] The policies also recognize that disclosure against a student's wishes may be required by other sources of law, such as the Family Education Rights Privacy Act (FERPA), 20 U.S.C. § 1232g, or New Jersey's Harassment, Intimidation, and Bullying laws. *See, e.g.*, N.J. Stat. Ann. § 18A:37-15(d).

a "case-by-case" approach which requires the school to consider the risks to the student, like "being kicked out of the home," as well as the necessities of the "health, well-being, and safety" of the student.[4] *See, e.g.*, Ex. A: Verified Complaint Pt. 1 of 3, ECF 23-3, at 35 [Hackensack Policy 5756]; Ex. A: Verified Complaint Pt. 2 of 3, ECF 23-4, at 1, 8, 21 [Burlington Township Policy 5145.7, North Hunterdon-Voorhees Policy 5145.7, Newark Policy 5145.7]. The fifth policy, Bethlehem Township's, does so implicitly, recognizing that a student's "health and safety" may mandate disclosure to their parents. Ex. A: Verified Complaint Pt. 2 of 3, ECF 23-4, at 16.

Simply put, *Mirabelli* does not provide that every instance of in-school gender nonconformity necessitates parental involvement. Otherwise, teachers' subjective interpretation of a student's behavior may result in potential danger to

---

[4] The possibility of family rejection is very real for many transgender and gender diverse youth. One in ten transgender people reported that a member of their family had been physically violent toward them because they were transgender, and 40% had experienced homelessness after family rejection. Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* 65 (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf. *See, e.g.*, Hannah Gross, *Transgender Students: How Controversy Over NJ School Policy Is Taking a Toll*, N.J. Spotlight News (Oct. 31, 2023), https://www.njspotlightnews.org/special-report/nj-transgender-students-say-school-policy-controversy-changes-take-toll (highlighting the story of a transgender student who experienced homelessness and hospitalization as a result of family rejection).

the student—and may reach beyond the scope of what the per curiam order requires.

### A. The Guidance and School Board Policies do not violate a parent's free exercise rights because they have not met even the preliminarily required threshold under *Mirabelli* to assert such a claim.

Crucially, Plaintiffs do not allege that they have even attempted to ask their children or their schools for information about their students' asserted gender identity—namely, to seek the kind of exemption that *Mirabelli* concerns. Amended Complaint, ECF 6, at 4. Under *Mirabelli*, parents must affirmatively seek this information in order to qualify for a religious exemption. *Mirabelli*, 607 U.S. at 496 (concluding only "that the parents *who seek* religious exemptions are likely to succeed on the merits of their Free Exercise Clause claim") (emphasis added)). Put differently, if no parental request is made, no disclosure to parents is required. And Plaintiffs have not pled that they made such requests here—let alone that these requests were denied or otherwise ignored. They simply fail to allege that they are being denied any kind of religious exemption that *Mirabelli* may require. While they state in their complaint that they "each have religious objections" to New Jersey's policies, they provide not a whit of further detail and, importantly, do not allege that they (a) have ever voiced these objections to their schools and then (b) had those objections handled in a dissatisfying way. Amended Complaint, ECF 6,

at 9. *Mirabelli* is thus an inapposite vehicle for Plaintiffs to secure the relief they seek.

Nor have the Plaintiffs pointed to any language in the policies that would absolutely prevent them from getting information they believe they are entitled to. Given these deficiencies, the parties and the interested public have no way of evaluating the policies in light of how they are actually implemented. *See Mirabelli*, 607 U.S. at 499 (Barrett, J., concurring) (observing how the implementation of California's policy plays out in practice for students and families); *see also Wash. State Grange*, 552 U.S. at 449-50 ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

Finally, *Mirabelli* does not require a "religious exemption" to be included in all school policies protecting transgender students that would direct schools to always and proactively notify parents on every perceived change to a student's gender expression or to track students on behalf of parents. 607 U.S. at 497 (leaving open the possibility that a religious exemption would be limited in scope). For example, nothing in *Mirabelli* suggests that private, casual, or informal expressions of gender identity, such as a student merely relying on a nickname or wearing clothes associated with a particular gender, must trigger a school's obligation to notify the student's parents.

### B. The Guidance and School Board Policies do not violate a parent's substantive due process rights in the rearing of their child because they do not compel, coerce, or constrain conduct by students or their parents.

*Mirabelli* leaves in place this Circuit's longstanding interpretation of parental rights. Substantive due process provides parents an important shield against affirmative government interference in the direction of the "upbringing and education of [their] children." *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 534-35 (1925). *See also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). That parental right is of critical importance, but it is "neither absolute nor unqualified," particularly where a school's internal management is concerned. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005). In this case, the Guidance and School Board Policies do not violate Plaintiffs' parental rights.

At base, a parent's substantive due process right protects the parent-child relationship from "manipulative, coercive, or restraining conduct by the State." *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 933-34 (3d Cir. 2011) (quoting *Anspach ex rel. Anspach v. City of Philadelphia*, 503 F.3d 256, 266 (3d Cir. 2007)). This covers only situations where a school (a) imposes its own will on students on a "matter[] of the greatest importance" and (b) forces or forecloses parental direction on that matter. *C.N.*, 430 F.3d at 184. For that reason, a conflict

between state action and parental liberty "will not be lightly found." *J.S.*, 650 F.3d at 933-34.

Critically, state actors do not have a general affirmative obligation to anticipate every parent's sensibilities and enforce those sensibilities when a child does not conform to them. *See Anspach ex rel. Anspach*, 503 F.3d at 268. ("The Constitution does not protect parental sensibilities, nor guarantee that a child will follow their parents' . . . directives."). Generally, a school's interference with parental rights is unlawful where it might coerce the student into making the school's preferred decision on a highly personal matter and takes affirmative action to "obstruct" the parent from decision-making on key issues. *Gruenke v. Seip*, 225 F.3d 290, 306 (3d Cir. 2000) (finding a parental rights violation where a school athletics coach actively encouraged gossip about a student's pregnancy to such an extent as to constitute an intrusion on a "private family matter" while excluding the parent from participation); *see also Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305, 314 (11th Cir. 1989) ("[W]e are not . . . constitutionally mandating that counselors notify the parents of a minor who receives counseling regarding pregnancy.").

Pursuant to the Guidance and the School Board Policies, the student is responsible for expressing their gender identity. The policies do not make that decision for the student nor coerce the student into acting with secrecy — they

simply allow the school to support all of its students regardless of gender identity. The school is not under a general constitutional obligation to inform parents about every voluntary decision made by a student. *See Parents United for Better Schs., Inc. v. Sch. Dist. of Phila. Bd. of Educ.*, 148 F.3d 260, 276 (3d Cir. 1998) (finding "no deprivation of the liberty interest of parents in the practice of not notifying them of their children's voluntary decisions . . . .") (quoting *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980)).

The Guidance and the School Board Policies simply do not cross the boundaries set by longstanding precedent—prohibiting coercing students or obstructing parents—such that it would justify granting Plaintiffs' motion.

## II. The state's Transgender Student Guidance and the School Board Policies serve the all-important goal of ensuring transgender students can enjoy safe and nondiscriminatory school environments.

As discussed above, Plaintiffs fail to show any "reasonable probability of eventual success in the litigation" because they have not actually explained how New Jersey's policies fall short of the preliminary standard set in *Mirabelli*. *Reilly*, 858 F.3d at 176 (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919 (3d Cir. 1974)). By failing to show that "[they] can win on the merits," Plaintiffs are entitled to no further consideration of their claim for preliminary injunctive relief. *Reilly*, 858 F.3d at 179 (holding that likelihood-of-success-on-the-merits is a threshold inquiry). But even if the Plaintiffs were to

come back with a different set of facts or a different argument against New Jersey's policies, their claim for injunctive relief would still require a balancing of all four injunctive relief factors: "(1) a reasonable probability of eventual success in the litigation, [] (2) that it will be irreparably injured . . . if relief is not granted . . . (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.* (quoting *Del. River Port Auth.*, 501 F.2d at 919).

On this front, a fuller record is likely to show that "other interested persons" —namely, the transgender and gender nonconforming students who benefit from careful school policies—would be harmed from the grant of Plaintiffs' requested relief. A full record in future proceedings would likely show that New Jersey's transgender student policies serve the goals of the New Jersey Law Against Discrimination to treat all students equally on the basis of gender identity or expression. *See, e.g.*, N.J. Admin. Code § 6A:7-1.1. These goals would be undermined by an injunction on the basis of Plaintiffs' inadequate and barebones pleadings. *See Reilly*, 858 F.3d at 176.

Many of these facts have already been evaluated and found by other courts. For example, "Just like being cisgender, being transgender is natural and is not a choice." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020). Thus, policies that affirm transgender students' identities are simply codifying the

basic civil decency owed to everyone. These policies foster "an environment of inclusivity, acceptance, and tolerance," benefiting not only transgender students but "all students by promoting acceptance." *Boyertown Area Sch. Dist.*, 897 F.3d at 529. These are also the goals animating the Guidance and School Board Policies, which seek to protect transgender and gender diverse students who face extraordinary obstacles to the enjoyment of safe and nondiscriminatory educational environments.

As the Third Circuit has observed, transgender youth face "extraordinary social, psychological, and medical risks," *Boyertown Area Sch. Dist.*, 897 F.3d at 528, in schools through "discrimination, harassment, and violence because of their gender identity," *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017), leading to consequences that have been acknowledged by this Court to be at times even "life threatening." *Boyertown Area Sch. Dist*., 897 F.3d at 529.[5]

[5] These courts' conclusions are based on ample scholarly research that is not in dispute, and which amicus presents as reflective of the sort of evidence which will likely be placed before the Court as it proceeds through normal processes. For example, transgender students are more likely than cisgender students to report violence, bullying, victimization, substance use, and suicide risk. *See, e.g.*, Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students — 19 States and Large Urban School Districts, 2017*, 68 Morbidity & Mortality Wkly. Rep. 67, 67 (2019); Joseph G. Kosciw, Caitlin M. Clark & Leesh Menard, GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* 19, 23 (2022),

New Jersey took action to protect transgender students within schools by enacting a law directing the State Department of Education to issue a state-wide guidance for school administrators concerning the treatment of transgender students. N.J. Stat. Ann. § 18A:36-41. The purpose of the law was clear: to ensure that schools are a learning environment "free from discrimination and harassment for transgender students, including students going through a gender transition." N.J. Stat. Ann. § 18A:36-41(b)(2). *See also Vainieri Huttle & Caride Bill to Create Safe & Welcoming School Environment for Trans Students Now Law*, Insider NJ (July 23, 2017), https://www.insidernj.com/press-release/vainieri-huttle-caride-bill-create-safe-welcoming-school-environment-trans-students-now-law ("These

https://www.glsen.org/sites/default/files/2022-10/NSCS-2021-Full-Report.pdf. The consequences of this harassment can be dire—within a one-year period, as many as 35% of transgender students attempt suicide. Johns et al., *supra*, at 70. In New Jersey, 44% of transgender and nonbinary youth report having "seriously considered suicide in the past year." The Trevor Project, *2022 National Survey on LGBTQ Youth Mental Health by State: New Jersey* 2 (2022), https://www.thetrevorproject.org/wp-content/uploads/2022/12/The-Trevor-Project-2022-National-Survey-on-LGBTQ-Youth-Mental-Health-by-State-New-Jersey.pdf. Seventy-three percent report symptoms of anxiety, and 63% report symptoms of depression. *Id.* About half of LGBTQ+ students in New Jersey experienced verbal harassment based on gender expression. GLSEN, *School Climate for LGBTQ+ Students in New Jersey* (2023), https://maps.glsen.org/wp-content/uploads/2023/02/GLSEN_2021_NSCS_State_Snapshots_NJ.pdf.

guidelines send a clear message to transgender children that we support them, and that discrimination and harassment of any form will not be tolerated.”).

The state’s Transgender Student Guidance, promulgated in 2018 pursuant to a bipartisan legislative mandate signed by Governor Chris Christie, later informed the creation of school board policies like Policy 5756 and Policy 5145.7 adopted by districts like Hackensack, Burlington, North Hunterdon-Voorhees, Bethlehem Township, and Newark. The policies are aimed at promoting a “supportive and nondiscriminatory” learning environment for transgender students that respects their autonomy and promotes their well-being. *See, e.g.*, Ex. A: Verified Complaint Pt. 2 of 3, ECF 23-4, at 6 [North Hunterdon-Voorhees Policy 5145.7]. They also are a means of ensuring schools meet their legal obligations under the New Jersey Law Against Discrimination to treat all students equally on the basis of gender identity or expression. *See, e.g.*, N.J. Admin. Code § 6A:7-1.1.

New Jersey doubtlessly has a compelling interest in providing a safe, welcoming educational environment that allows all students to realize their full potential. *See Boyertown Area Sch. Dist.*, 897 F.3d at 528-29 (holding that a school district had a compelling interest in protecting the physical and mental well-being of its students, including transgender children). Gender identity is a person’s core sense of belonging to a particular gender. *See, e.g.*, *Doe v. Ladapo*, 676 F. Supp. 3d 1205, 1210 (N.D. Fla. 2023). For cisgender people, that gender identity conforms

to their gender assigned at birth and the expectations others might have for them. For transgender people, it may not. But regardless of our gender identity or how we express it—such as through our names, our pronouns, or our clothing—it is a sign of basic respect, dignity, and courtesy to treat people with fairness and kindness. Against this backdrop, through the Guidelines and the School Board Policies, New Jersey and its schools respect their students' expressed sense of their gender identity as part of respecting each individual student and ensuring that every student learns in a safe and supportive environment free from discrimination. At the same time, New Jersey and its schools are doing so through Guidelines and Policies that constitutionally weigh the interests of the students and the interests of parents. *Mirabelli* does not suggest otherwise.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: September 1, 2026

Respectfully submitted,

*s/ Ezra D. Rosenberg*

Ezra D. Rosenberg (NJ 012671974)
Dillon S. Reisman (NJ 374142021)
Jeanne LoCicero (NJ 02052000)
American Civil Liberties Union
of New Jersey Foundation
570 Broad St., 11th Floor
P.O. Box 32159
Newark, New Jersey 07102

(973) 854-1714
erosenberg@aclu-nj.org

*Counsel for Amici Curiae*